PARSONS COMPANY *v.* HALL.

1. SALES—AIRPLANES—TRANSFER OF INSURANCE—EVIDENCE.

In nonjury action of assumpsit to recover purchase price of an airplane sold defendant, finding of trial court that defendant had failed to substantiate his claim that plaintiff had agreed to transfer the insurance before or at the time of delivery of the airplane *held,* proper.

2. SAME—AIRPLANES—RECORD TITLE—IMPLIED CONTRACT.

In the sale of an airplane eligible for registration under the civil aeronautics act there is an implied contract upon the part of the seller to deliver to the buyer a good record title as required by the act since such an airplane may not be legally flown without being registered by its owner (49 USCA, § 521).

3. SAME—AIRPLANES—DELAY IN TRANSFERRING TITLE.

Where title to airplane sold by plaintiff to defendant on November 5, 1945, was then in a third party, was transferred to plaintiff by February 14, 1946, but not delivered to defendant until August 29, 1946, court which tried nonjury action of assumpsit for purchase price, should have made a finding of fact to determine whether or not there was an unnecessary delay upon plaintiff's part in completing the record title and, if so, what damages were suffered by defendant because of such delay (49 USCA, § 521).

4. SAME—AIRPLANE—DEFECTIVE FUEL PUMP—BREACH OF WARRANTY.

If fuel pump on an airplane, represented to be in first-class condition at time of sale, was defective there would be a breach of warranty.

5. APPEAL AND ERROR—FINDING OF FACT—EVIDENCE.

Ordinarily the Supreme Court does not substitute its judgment for that of the trier of the facts where the facts are in dispute.

6. SALES—RECOUPMENT FOR BREACH OF WARRANTY—EVIDENCE.

In action of assumpsit to recover purchase price of an airplane, evidence in support of buyer's interposed claim of recoup-

Breach of warranty as basis for rescission, see 2 Restatement, Contracts, § 400.

ment insofar as based on breach of warranty as to mechanical and flying condition, preponderated in favor of his claim that fuel pump was not working on date of the purchase of the plane.

7. APPEAL AND ERROR—REMAND—BREACH OF WARRANTY—DAMAGES —EVIDENCE.

Judgment for plaintiff in nonjury action of assumpsit to recover purchase price of airplane is reversed and case remanded for purpose of taking testimony (1) on his claim of recoupment based on breach of warranty where evidence preponderates in favor of his claim that fuel pump was not working when plane was sold, which resulted in his making a forced landing, damage to the airplane and loss of use, and (2) because of damages he had suffered by reason of plaintiff's delay in transferring title.

Appeal from Kent; Verdier (Leonard D.), J. Submitted October 8, 1947. (Docket No. 14, Calendar No. 43,805.) Decided December 3, 1947.

Assumpsit by Parsons Company against O. C. Hall for purchase price of airplane. Defendant pleaded recoupment. Judgment in full for plaintiff. Defendant appeals. Reversed and remanded for taking testimony on plea of recoupment.

*Dahlberg & Simon (Travis, Merrick, Varnum & Riddering,* of counsel), for plaintiff.

*McCobb, Heaney & Dunn,* for defendant.

SHARPE, J. This is an action in assumpsit to recover the purchase price of an airplane sold by the Parsons Company to defendant, O. C. Hall.

The negotiations for the purchase of the plane were conducted by telephone conversation between Mr. Parsons, an officer of plaintiff company, in Traverse City and defendant in Grand Rapids. The agreed price was $2,750 and defendant was to take

delivery of the plane at the Traverse City airport. On November 5, 1945, defendant with one of his pilots flew to Traverse City to take delivery of the plane. When he arrived at the airport, he met Mr. Fisher, an agent of plaintiff company, and turned over to him a check for the purchase price. Defendant inspected the plane on the ground, including the running of the motor which appeared to be functioning in a proper manner. He found that the wing tank was filled with fuel; and that the gauge for the header tank showed there was fuel in the header tank. No inspection was made of the contents of the header tank. After warming up the plane, defendant commenced his flight for Cadillac. As soon as he was up in the air he started watching the gas gauge and since the wing tank gauge did not appear to go down, he turned the fuel valve parallel with the line. After flying with it in this position, he found that the gauge still did not go down; then he turned the valve crossways again. At this time the motor started to miss. He was then 15 to 20 minutes out of Traverse City and, as the plane was losing altitude, he made a forced landing. The plane was damaged in the landing. Upon examination he discovered that the wing tank was full of fuel; and that the header tank was empty.

The plane was disassembled the next day and taken to Grand Rapids and put in the repair department of the Northern Air Service. An examination of the fuel pump was made four or five days after the crash and it was found to be rusty and beyond repair. The day after the crash, defendant stopped payment on the check which he had delivered to Mr. Fisher at the time he took delivery of the plane.

Plaintiff commenced the present action and defendant filed a claim in the nature of a recoupment

for the sum of $1,668.32 for the cost of repairs and damages for the loss of the use of the plane. The cause came on for trial before the trial judge, without aid of a jury; and a judgment was rendered in favor of plaintiff for the full amount of its claim.

Defendant's defense to plaintiff's action and claim for recoupment are based upon the theory that at the time of the purchase of the airplane plaintiff company agreed to secure the transfer of insurance before or upon delivery of the airplane, but failed and neglected to have such insurance transferred; that at the time of the sale of the airplane, plaintiff represented that it was the owner of the airplane and would deliver to defendant a good record title as required by law for registration under the civil aeronautics act (49 USCA, § 401 *et seq.*) and the regulations thereunder, but that due to defects in the title defendant has been denied the use of and opportunity to resell said airplane; and that plaintiff warranted the plane to be in A-1 mechanical and flying condition.

The judgment in favor of plaintiff was based upon a written opinion filed by the trial judge in which he found that the testimony fails to substantiate defendant's claim that plaintiff company agreed to transfer the insurance before or at the time of the delivery of the airplane to defendant; that at the time the airplane was sold, defendant knew the exact status of the registered title, that it was not in the name of plaintiff company, and that the laws and regulations with reference to the title and registration of airplanes have nothing to do with the validity of their sale; and that while plaintiff company represented to defendant that the plane was in first-class condition, yet defendant did not prove that the pump was defective at the time he took delivery of the plane.

We are in accord with the trial court that defendant did not substantiate his claim that plaintiff agreed to transfer the insurance before or at the time of delivery of the airplane.

We are not in accord with the trial court's finding in regard to the record title. It appears that the sale of the airplane was made on November 5, 1945, and at the time of the sale all parties knew that the record title of the airplane was in the name of Union Airways, Inc.; that plaintiff perfected its record title on May 20, 1946, but refused to deliver the necessary papers properly indorsed to defendant until August 19, 1946, after the trial.

Plaintiff urges that on November 5, 1945, defendant got the file of documents pertaining to the airplane including a bill of sale from Union Airways, Inc., to plaintiff company; that no demand was made to complete the transfer of registered title to defendant; that it was impossible for plaintiff to apply for the transfer of registered title to itself prior to February 14, 1946, that the registration transfer was delivered August 29, 1946, and that there was no obligation upon plaintiff to transfer the record title until defendant had paid or tendered the purchase price.

We think there was an implied contract upon the part of plaintiff to deliver to defendant a good record title as required by the civil aeronautics act.

Section 501 (a) of title 5 of the civil aeronautics act of 1938 (52 Stat. at L. 1005, 49 USCA, § 521) provides that:

"It shall be unlawful for any person to operate or navigate any aircraft eligible for registration if such aircraft is not registered by its owner as provided in this section or  \*  \*  \*  to operate or navigate within the United States any aircraft not eligible for registration."

If defendant was to enjoy the use of his plane it was necessary that his title be registered. While plaintiff did eventually complete the agreement to convey a good record title, yet the trial court should have made a finding of fact to determine whether or not there was an unnecessary delay upon the part of plaintiff in completing the transfer of record title and, if so, what damages were suffered by defendant because of such delay.

Defendant urges that the trial court was in error in finding that defendant had not maintained the burden of proof of his claim that the airplane was delivered with an inoperative fuel pump. There seems to be no question about the fact that the airplane was represented to be in first-class condition and if, at the time of the sale, the fuel pump was defective, there would be a breach of warranty. The condition of the fuel pump presents a question of fact.

The airplane in question has two fuel tanks, a header tank with a capacity of five gallons and a wing tank with a capacity of nine gallons. The gasoline is fed to the header tank from the wing tank by means of a fuel pump. If the fuel pump is operating properly, the header tank should be full so long as there is gasoline in the wing tank. It also appears that the average rate of consumption of gasoline of the airplane is four and a half gallons per hour with a minimum of 3.40 and a maximum of 5.53 gallons per hour.

There is evidence that when defendant took delivery of the plane he checked the gasoline supply in the wing tank and found it full. He checked the gauge for the header tank and found it indicated there was gasoline in that tank. He inspected the valve and found it crossways of the fuel line. Before taking off he ran the motor and found it functioning

properly. As soon as he was up in the air, he started watching the gas gauge and noticed that the wing tank gauge was not going down. Soon thereafter the motor started missing and he was compelled to make a landing. He was in the air 15 or 20 minutes. While in the air he turned the fuel valve parallel with the line and later turned it crossways, but neither position of the valve allowed sufficient gasoline to get to the header tank.

A few days after the forced landing, the fuel pump was disassembled and was found full of flakey rust and the diaphragm deteriorated. A witness testified that from his examination of the fuel pump, it had not been in operation for a period of approximately 30 days before the crash.

There is also evidence that the airplane was flown for a period of one hour on or about October 7th, for periods of one hour and of 30 minutes on October 28th, and of 30 minutes on November 2d; and that upon October 28th, after the hour flight, fuel was put into the header tank. It is an established fact that if the fuel pump is working properly, it is not necessary to put fuel in the header tank as long as there is any fuel in the wing tank. We recognize the rule that we do not ordinarily substitute our judgment for that of the trier of the facts where the facts are in dispute, but this is hardly such a case.

Mr. Alto, plaintiff's witness, testified that he flew the airplane three times within a month previous to the sale; that five gallons of gasoline would not hold him in the air for an hour without being supplied from the wing tank, but at no time did the flight last more than one hour. No explanation is offered why, upon one of these occasions, the header tank was filled, when it was only necessary to fill the wing tank if the fuel pump was in working condition.

We note that the rate of consumption of gasoline in this type of motor is listed at four and a fourth gallons per hour with a minimum of 3.40 and a maximum of 5.53 gallons per hour, and an average of four and a half gallons per hour at regular cruising speed. It is, therefore, not only possible, but probable that the gasoline in the header tank was sufficient to maintain the airplane in the air during any of the three occasions that Mr. Alto flew the airplane.

The decision of the trial court was based upon the assumption that the pump might have become defective when the airplane made a forced landing or that the fuel valve was improperly manipulated. We are unable to find any competent evidence in the record to support such assumptions. The record does furnish evidence that the fuel pump was in an unworkable condition after the crash and probably had not been working properly at the time of the sale of the airplane. In our opinion the evidence preponderates in favor of defendant's claim that the fuel pump was not working on the date of the purchase of the airplane.

Under such circumstances it becomes our duty to reverse the finding of fact made by the trial court and remand the cause for the purpose of taking testimony on defendant's claim of recoupment and enter judgment in favor of plaintiff for such amount as may be found due. Defendant may recover costs.

CARR, C. J., and BUTZEL, BUSHNELL, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.